DALLAS RY. & TERMINAL CO. v. WHITCOMB.

No. 2354.

Court of Civil Appeals of Texas. Waco.

June 5, 1941.

Rehearing Denied July 24, 1941.

528

Burford, Ryburn, Hincks, & Charlton and Logan Ford, all of Dallas, for appellant.

Thos. T. Lewis, of Dallas, for appellee.

RICE, Chief Justice.

This suit was brought by H. E. Whitcomb against Dallas Railway & Terminal Company to recover for personal injuries alleged to have been received by plaintiff's wife when she was preparing to alight from one of defendant's busses in the city of Dallas. The parties will be designated as in the trial court.

The case was submitted to a jury on special issues; and, on answers thereto favorable to the plaintiff, judgment was rendered against defendant for the sum of $5,000, from which defendant has appealed.

Plaintiff pleaded numerous injuries to his wife, but did not allege any injuries to her elbows. While Mrs. Whitcomb was testifying she was asked by plaintiff's at-

torney to state what part of her body came in contact with the bus when it started suddenly. She answered that her head struck the hand-rail; and then added that her elbows struck parts of the bus and were both bruised and sore.

Objection was made by defendant that plaintiff had not pleaded any injuries to his wife's elbows; this being admitted by plaintiff's counsel, the court thereupon orally instructed the jury to disregard the statements of the witness as to any injuries to her elbows, and not to consider such statements for any purpose whatever in connection with the case.

While plaintiff's witness Dr. Patterson was being interrogated by plaintiff's counsel, and after he had testified that shortly after Mrs. Whitcomb was injured he had examined her, the witness was asked what he found her physical condition to be at that time. He replied that he found evidence of an injury to her neck, head, abdomen and left elbow.

On defendant's objection, the court instructed the jury orally not to take into consideration any testimony in reference to Mrs. Whitcomb's elbows "as far as this case is concerned."

Defendant excepted to the court's main charge because the jury were not therein instructed not to consider injuries to Mrs. Whitcomb's elbows. This objection was by the court overruled.

Defendant timely requested the court to instruct the jury that they should not award plaintiff any compensation for injuries to his wife's elbows, and presented to the court a special charge, which was refused, instructing the jury that the testimony as to injuries to Mrs. Whitcomb's elbows was withdrawn and was not to be considered.

Defendant, by its first assignment of error, says that in view of the foregoing proceedings, which divulged to the jury that plaintiff's wife suffered injuries to her elbows which were not pleaded, the court committed reversible error in that he did, by Special Issue No. 29, authorize the jury to compensate plaintiff for damages "resulting directly and proximately from the injuries, if any, to plaintiff's wife at the time and on the occasion inquired about in this law suit." Defendant argues that the above quoted language expressly authorized the jury to take into consideration, in de-

termining plaintiff's damages, the injuries which his wife suffered to her elbows.

That part of Special Issue No. 29 which contains the language above quoted reads as follows: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, would reasonably compensate the plaintiff * * * for damages * * * resulting directly and proximately from the injuries, if any, to the plaintiff's wife at the time and on the occasion inquired about in this law suit?"

Although the court did not in writing expressly withdraw from the jury the testimony as to the injuries to Mrs. Whitcomb's elbows, and did not in writing expressly instruct the jury not to consider the injuries to her elbows in arriving at the amount of plaintiff's damage, the court did incorporate in its charge the following instructions to the jury: "You are further instructed that while you are deliberating upon your answers to the foregoing special issues, you will not mention nor refer to, nor take into consideration any matter, fact or circumstances, other than the testimony that has been admitted before you."

We do not feel that Special Issue No. 29 as submitted by the trial court can reasonably be given the meaning and effect ascribed to it by the defendant; nor that the jury in this case, in view of the proceedings hereinabove set forth, were probably misled thereby and caused to believe that they could consider the injuries to Mrs. Whitcomb's elbows in arriving at the amount of plaintiff's damages. But if any doubt did arise in the minds of the members of the jury as to whether or not said charge, contrary to the previous instructions of the court, authorized them to consider injuries to Mrs. Whitcomb's elbows, we believe that such doubt would have been and was dispelled by that portion of the court's charge above quoted, instructing the jury that in their deliberations upon their answers to the special issues, they were not to mention or refer to nor take into consideration any matter, fact or circumstances other than the testimony that had been admitted before them. The record shows that the only two references made during the trial to any injury to the elbows of plaintiff's wife were made inadvertently, and that on each occasion the court promptly instructed the jury that they could not consider such evi-

dence for any purpose. The testimony excluded by the court was not, in our opinion, of a nature that was calculated to prejudice the defendant or to inflame the minds of the jury; but on the contrary, would indicate to the jury that the injuries to plaintiff's wife's elbows were trivial. Appellant's first assignment of error is therefore overruled.

Appellant's second assignment of error is that the court erred in failing to instruct the jury in its written charge to disregard and not to consider the testimony of Mrs. Whitcomb and Dr. Patterson disclosing the injuries to Mrs. Whitcomb's elbows, since, under Article 2184, Revised Statutes, the court is required "to deliver a written charge to the jury on the law of the case," and "it is easily conceivable that during the course of the trial a verbal instruction of the character stated would be overlooked in the consideration of the case."

It would perhaps have been the better and safer practice for the trial court, on proper request, to have instructed the jury in writing not to consider the evidence which had been orally withdrawn from its consideration. However, in view of the record before us, we do not feel that the trial court erred in respect to the matter complained of by defendant, and accordingly we overrule this assignment of error.

The court did, in his charge, instruct the jury as set forth above not to mention or refer to, or take into consideration any matter, fact or circumstance other than the testimony admitted before it. The foregoing instruction, in the light of the record before us, we think, was sufficiently explicit to inform the jury that the evidence withdrawn from it by the court during the trial could not be considered by it for any purpose; and that the jury should have understood, and probably did understand, that such instruction included the evidence in respect to the injuries to the elbows of plaintiff's wife.

If we should be mistaken in the foregoing holding that no error was committed, we would nevertheless overrule this assignment, because, after a careful consideration of the record, it is our opinion that this action of the trial court, if error, was harmless. No effort was made to show that the jury did in fact consider injuries to Mrs. Whitcomb's elbows. There is nothing in the record to indicate that the jury did not observe the instructions of the court not to consider such testimony. The finding of the jury as to the amount of damages, in our opinion, is not excessive, and is not attacked as excessive. The statement of Mrs. Whitcomb as to her elbows was: "They were both bruised and both were sore," thus indicating that these injuries were of a trivial character. On the other hand, she testified in graphic detail to other injuries to her person allegedly caused by defendant's negligence. If she and her two doctors are to be believed, the injury to her head, on the occasion in question, was most serious in its results, causing her to suffer intense pain for many months and to be so nervous that she could not sleep. The testimony further showed that this head injury produced nausea and continuous painful headaches; that in an effort to relieve plaintiff's wife, the doctors punctured her spine three times; that a numbness or weakness developed in her left face and in her right arm and leg; that the corners of her mouth were caused to droop; that when the spinal punctures revealed that spinal pressure was increasing between each puncture, the doctors concluded that this was caused by pressure on the head, probably due to a blood clot; that they thereupon drilled two holes with a brace and bit in her head, and found the trouble was due to a collection of water between the two outer membranes covering her brain. This cyst was drained. These doctors testified that this condition in plaintiff's wife's head could have been, in their opinion, caused by the injury which she received to her head on defendant's bus. One of the doctors had known Mrs. Whitcomb several years, had examined and treated her prior to her injury, and he testified, as did Mrs. Whitcomb, that prior to the injury to her head she was a healthy, normal woman and did not suffer from nervousness or headaches nor from the other pains which she experienced after her injury. One of the doctors further testified that after the operation Mrs. Whitcomb's condition improved, and might continue to improve; that it would require two years to determine whether Mrs. Whitcomb's condition would clear up, but it was his opinion she would always have some damage.

In its third assignment of error defendant contends that the instruction given by

the court to the jury in Special Issue No. 29, to compensate plaintiff for damages "resulting directly and proximately from the injuries, if any, to plaintiff's wife at the time and on the occasion in question," was in conflict with the verbal instruction of the court, given in the course of the trial, to the jury not to consider testimony of injury to Mrs. Whitcomb's elbows; and that such conflicting and inconsistent instructions were misleading, confusing to the jury and prejudicial to the defendant. We overrule this assignment for the same reasons advanced in overruling defendant's second assignment of error.

■ As its fourth assignment of error the defendant says that the court's charge instructing the jurors that they would be governed by the law "as it is herein given you," is in conflict with the verbal instructions given in the course of the trial but omitted from the written charge, instructing the jury not to regard for any purpose the injuries to Mrs. Whitcomb's elbows. We see no merit in this assignment and it is accordingly overruled.

■ Appellant's fifth assignment is that the jury's finding that the bus was started with a sudden and unnecessary jerk is so against the great weight and preponderance of the evidence, and is in such conflict with obvious reason and justice as to render the findings manifestly wrong. We overrule this assignment. In our opinion, the record reveals that the finding of the jury complained of is supported by ample evidence. Mrs. Whitcomb testified that she was thrown off balance and caused to fall and injure her head because defendant's bus started without warning, with a sudden jerk and lurch. She testified that immediately after she was caused to fall she asked the bus driver if he was trying to kill her and he immediately answered: "I am sorry, lady, I did not see you."

Defendant's driver testified that Mrs. Whitcomb, on the occasion in question, asked him if he was trying to throw her down or break her neck, and that he told her he was sorry and asked her if he hurt her; that she either gave him the answer "No", or shook her head; "anyway, she didn't say she was hurt at that time."

Mr. Chrisman testified that he did not know Mrs. Whitcomb and had seen her on only two occasions; the first being the time she received her injuries, the other being while he was testifying at the trial of this case. He testified that he was a resident of the city of Dallas and was and had been in the employ of the United States Postal Department of said city for the past twenty years. He testified he was a passenger on the bus on the occasion in question and first noticed Mrs. Whitcomb when she lost her balance and fell backwards when the bus lunged forward; that "when the bus jerked forward, it got her overbalanced and she whirled kind of this way and fell back." When asked to describe the manner in which the bus started forward, this witness testified: "Well, anybody that drives an automobile knows when the clutch is grabbing. If you don't know exactly how to work that clutch it is going to lurch forward, and that is the way it seemed to me." On cross-examination this witness was asked by defendant's counsel in respect to how many passengers there were on the bus on the occasion of Mrs. Whitcomb's fall, and answered that there were three or four. He thereupon asked witness: "Did any of those witnesses say anything to the operator about the manner in which he started the bus?" And the witness answered: "Well, I don't know who it was, but somebody said it was a little bit rough." This witness testified that when the bus started forward with a jerk that he was thrown backward in his seat.

None of the other passengers that were on the bus on said occasion were called to the witness stand by the defendant, the only witness introduced by the defendant who was present on that occasion being the bus driver. He denied that the bus was started suddenly or with a jerk. In addition, the defendant introduced the reading from a cyclometer which was attached to the bus on said occasion, this being a machine devised for the purpose of registering, as stated by defendant's witnesses, the rough starts and stops made by the bus. This reading showed that the bus in question made no rough starts or stops the day Mrs. Whitcomb was injured.

■ The credibility of the witnesses and the weight to be given their testimony were matters for the determination of the jury in this case. In our opinion, the evidence introduced by plaintiff was sufficient to support the finding of the jury on the issue complained of.

By its sixth assignment of error defendant says that the court erred because in its charge it used, without defining the meaning thereof, the terms "sudden" and "unnecessary jerk". Defendant contends that these terms have a separate and distinct meaning in law from their ordinary and accepted usage, and should have been defined as any other legal term. We overrule this assignment of error.

The above mentioned terms appear in three of the special issues submitted by the court in reference to the manner of starting defendant's bus on the occasion in question. In one of these issues the jury was asked if the starting forward of the bus was sudden. As corollary to this issue and only in event the same was answered "yes", the jury was asked if the sudden starting forward of the bus, if it had so found, was done with an unnecessary jerk. The next issue was to be answered only in event the foregoing issue was answered in the affirmative, and submitted the question if, in starting the bus suddenly, if the jury had so found, and with an unnecessary jerk, if the jury had so found, the bus driver was negligent.

The terms "sudden" and "unnecessary jerk" are terms of such general use and of such a commonly accepted meaning that they needed no definition to be understood. In our opinion, these terms were used in the court's charge in their ordinary, everyday and commonly accepted usage.

By its seventh assignment of error defendant contends that the court erred in submitting Issue No. 6, reading as follows: "Do you find from a preponderance of the evidence that at the time and on the occasion in question the defendant's bus driver failed to keep a proper lookout for plaintiff's wife?", in that it submits in one issue more than one ultimate issue of fact, to-wit, did the defendant's operator keep a lookout, and secondly, whether the character of lookout which he did keep was "negligence," as that term is defined in the court's charge. Following Special Issue No. 6, Special Issue No. 7 was submitted as follows: "Do you find from a preponderance of the evidence that such failure, if any you have found in answer to Special Issue No. 6, was a proximate cause of the injuries, if any, of plaintiff's wife?" The court instructed the jury that "the term 'proper lookout,' as used in this charge, means that kind of lookout that would be kept by a very cautious and prudent person under the same or similar circumstances." This issue as submitted was perhaps subject to the criticism made. Clements v. Wright, Tex.Civ.App., 47 S.W. 2d 652; Kasch v. Anton, Tex.Civ.App., 81 S.W.2d 1097; Hornsby Heavy Hdw. Co. v. Prichard, Tex.Civ.App., 119 S.W.2d 410; Tucker Oil Co. v. Matthews, Tex. Civ.App., 119 S.W.2d 606. However, if the submission of such issue was error, it would not require a reversal, in view of the fact that the jury, in answer to other special issues, found the defendant guilty of negligence in starting its bus suddenly and with an unnecessary jerk, and that such negligence was a proximate cause of the injuries to plaintiff's wife. Such findings of the jury in respect to another and independent ground of negligence were sufficient to support the judgment rendered. Texas Motor Coaches, Inc., v. Palmer, Tex.Civ.App., 97 S.W.2d 253; Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090; Austin v. De George, Tex.Civ.App., 55 S.W.2d 585; Commercial Casualty Ins. Co. v. Hamrick, 127 Tex. 403, 94 S.W.2d 421.

By its eighth assignment of error defendant contends that the evidence in this case raised an issue as to whether the cyst or sac, found on the exploratory operation on Mrs. Whitcomb's head, existed prior to the alleged accident; and that under such circumstances the court, in its written charge, should have affirmatively instructed the jury that in event they found such condition to have existed before the accident, the plaintiff would be entitled to recover only to the extent that his wife's injuries had been aggravated by the alleged accident. This matter was called to the attention of the court by the defendant by an exception to the court's charge, which was by it overruled. The defendant did not plead that the condition above set forth existed prior to the occasion when Mrs. Whitcomb was injured on defendant's bus, nor did it request an issue to be submitted to the jury in reference thereto. There was no evidence that this condition did exist before Mrs. Whitcomb was injured by defendant's bus, and both of her doctors testified that in their opinion the injury which she received to her head on that occasion could cause the cyst which they found between the layers of the covering of Mrs. Whitcomb's brain. However, one of these doctors, on cross-examination, testified that such a cyst

could have been caused by an infection of the meninges covering the brain which become infected as in meningitis. There was no evidence that Mrs. Whitcomb had ever suffered from meningitis or any illness or infection that could have caused the condition which the doctors found to exist. Mrs. Whitcomb testified that prior to her injury she was in good health, felt fine, and suffered from none of the discomforts that she suffered from subsequent to her injury. Dr. Patterson testified he had been Mrs. Whitcomb's family physician for four years immediately prior to her injury; that he had examined her before she was injured and considered her perfectly normal and well. However, the court did, in Special Issue No. 29, limit the jury in ascertaining the amount of damages to those damages "resulting directly and proximately from the injuries, if any, to the plaintiff's wife at the time and on the occasion inquired about in this law suit." This instruction of the court, in our opinion, by necessary exclusion would eliminate from the consideration of the jury any condition or disease existing in Mrs. Whitcomb's head prior to the occasion in question. Defendant's eighth assignment of error is overruled. Stayton v. Contreras, Tex.Civ.App., 150 S.W.2d 342.

.We have considered defendant's ninth assignment of error and overrule same for the reasons stated in reference to appellant's assignment No. 2.

The judgment of the trial court is affirmed.